# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 24, 2009 Session

## STATE OF TENNESSEE v. RICHARD D. BAKER

**Appeal from the Criminal Court for Sullivan County**
**No. S50,593     Jon Kerry Blackwood, Senior Judge**

---

**No. E2008-01382-CCA-R3-CD - Filed June 5, 2009**

---

The defendant, Richard D. Baker, appeals the revocation of his six-year probationary sentence. He contends that the trial court erred by revoking his probation before the commencement of the probationary term and by ordering incarceration. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Wade V. Davies, Knoxville, Tennessee, for the appellant, Richard D. Baker.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; H. Greeley Wells, District Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In April 2005, a Sullivan County grand jury charged the defendant with one count of assault, one count of aggravated burglary, one count of especially aggravated kidnapping, and four counts of aggravated assault. The charges stemmed from the defendant's December 29, 2004 uninvited entry into the residence of his ex-wife, Olivia Baker, wherein he struck Ms. Baker in the face, threatened the lives of Billy Ray Insco[1] and Charles Nelson Wright with a handgun, and forced Mr. Insco from the home at gunpoint. On January 31, 2006, the defendant entered pleas of guilty to assault, aggravated burglary, kidnapping, and two counts of aggravated assault. The facts, as summarized by the State at the plea submission hearing, are as follows:

---

[1]Different portions of the record utilize different spellings of Mr. Insco's name. As is the policy of this court, we utilize the spelling in the indictment.

If there had been a trial in this case the State's proof would be that this offense occurred on December the 29th, 2004[,] at 3736 Arrowhead Trail, which is located in Kingsport, Sullivan County. The State's proof, again if there had been [a] trial, would be that of Olivia Baker, who was the ex-wife of the defendant. She resided at that address . . . it was her home. She had hired a Billy Ray Insco[] and Nelson Wright to do security work at her home. Her testimony would be the defendant came to the door, she told him to leave, she advised that she went outside and that the defendant stated he had a key that he wanted to try. Her testimony would be she told him that he could not come in the house and that he pushed her out of the way and he went into the house and that he went upstairs and then she went upstairs and at that point the defendant came in contact with Billy Insco[], one of the security workers. Her testimony would be that Doctor Baker grabbed her by the hair in her bedroom and hit her, punched her in the eye. And then he turned around and after hitting her he went downstairs and went outside and went next door.

Now the State's proof would be that he returned with a weapon and Mr. Insco[] advised that the defendant, and he would testify to this, that the defendant came back with a gun and started asking who he was and what he was doing there. Mr. Insco[]'s testimony would be that the defendant pointed a gun at him and stated, "I'll kill you," and then hit him twice in the head with the weapon and drug him into the house. And Nelson Wright would say during this time that the defendant also pointed the gun in a threatening manner toward him, a deadly weapon, and that Olivia Baker's testimony would be during this time that she observed that he also pointed a weapon at her. That would be the State's proof, . . . if there had been a trial in this case.

Pursuant to a plea agreement with the State, the defendant received an effective sentence of twelve years to be served as six years' incarceration in the Department of Correction ("TDOC") followed by six years' supervised probation. As a condition of probation and as a special condition of each judgment, the trial court ordered the defendant to have no contact with any of the victims.

On April 18, 2008, while the defendant was serving his TDOC sentence, the State filed a "Motion for Violation of Probation," alleging that the defendant had violated the terms of his probation by writing to Ms. Baker on three separate occasions. The defendant filed a response to the State's motion, arguing that the trial court was without authority to revoke his probation because his probationary term had not yet commenced, that the State had "engaged in unreasonable delay" in filing the motion, that the defendant had already been punished via a denial of parole for writing the letters, and that the trial court should consider "less onerous alternatives to revocation." The

defendant admitted writing the letters and stated that no other letters had been written since January 2007.

Neither party presented testimony at the May 12, 2008 hearing on the revocation motion, choosing instead to rely upon the arguments of counsel and the letters written to Ms. Baker. At the conclusion of the hearing, the trial court revoked the defendant's probation, finding first that "he [was] subject to probation and that . . . he [was] subject to the conditions of the probation in the second sentence." The court also found that the revocation was "timely filed and that as far back as January[] 2007 the State gave notice of these letters or their intention to file a probation revocation as a result of these conditions." The trial court noted that "the most important consideration of probation in this plea arrangement was that he have no contact with any of the victims in this case" and concluded that "based upon these letters and [the defendant's] own admission that from . . . October 2006 through January of 2007 that he wrote three letters . . . they are clear violations of the terms of probation." The court determined that "the State has proved by a preponderance of the evidence that [the defendant] has violated the terms not only of his probation but the terms of the plea arrangement as well."

The trial court noted that it was particularly concerned that the defendant had "not taken any responsibility for his actions and still considers that his plight is a result of either the manipulations of the Sullivan County Judicial System, the District Attorney's Office and law enforcement or the manipulations and allegations made by his ex-wife and . . . the two men that were there." The court observed that the defendant's role in the offenses was clear and concluded that the defendant "definitely poses a threat to society until he gets a grip on his responsibility for his conduct in this case." The trial court did not order that the entirety of the second six-year sentence be served in confinement but instead ordered the defendant to serve an additional year of incarceration to be followed by supervised probation with global positioning system ("GPS") monitoring. The court specified that the defendant was to commence service of the 12 months' incarceration immediately upon his release on parole, which the parties believed to be imminent, and ordered that the sentence be served in TDOC "simply because of the medical issue."[2]

The defendant filed a timely notice of appeal from the revocation order. In this appeal, the defendant first contends that the trial court was without authority to revoke his probation because the probationary sentence had not yet commenced when he wrote the letters to Ms. Baker. He also contends that "allowing revocation of probation at this point would rewrite the plea agreement after the fact and render the plea involuntary." He asserts that the trial court abused its discretion by revoking his probation because he has already been punished, via a denial of parole, for writing the letters, because he has not contacted the victim since January 2007, and because "there are adequate safeguards in place to insure the safety of the community." Finally, in response to the State's suggestion that the trial court could not have ordered that the additional 12 months' incarceration be served in TDOC, the defendant contends that the amendment of the judgment "to

---

[2]Other portions of the record establish that the defendant suffers from severe diabetes requiring that he be placed in a "special needs" facility within TDOC. The record also establishes that the defendant was denied parole subsequent to the revocation hearing.

reflect a jail sentence rather than" a TDOC sentence would be "clearly contrary to the intent of the trial court." He asks that should we find revocation appropriate but a TDOC sentence improper, we should remand the case for the trial court to reconsider the remedy portion of the revocation order.

## I. Trial Court's Authority to Revoke Probation

The defendant contends that the trial court erred by revoking his six-year probationary sentence before the probationary term had actually commenced. The State asserts that the trial court possessed the authority to revoke the defendant's probation at any time following the entry of the judgment. We agree with the State.

Although the defendant correctly asserts that his six-year probationary sentence had not yet begun when he wrote the letters to Ms. Baker, this court has repeatedly held that "from the date of the entry of a judgment . . . a trial court has the authority to revoke probation if a defendant commits another crime after entry of the judgment, but before the probationary term begins." *State v. Stone*, 880 S.W.2d 746, 748 (Tenn. Crim. App. 1994); *see also, e.g.*, *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). In *Stone*, we ruled that neither the language in Code section 40-35-310 providing for revocation "at any time within the maximum time that was directed and ordered by the court for the suspension," *see* T.C.A. § 40-35-310 (2006), nor the language in section 40-35-311 applying revocation procedures to a defendant "who has been released upon suspension of sentence," *see id.* § 40-35-311, "purport[s] to limit to such a circumstance the trial court's authority to act." *Stone*, 880 S.W.2d at 748. Later, in *State v. Smith*, 909 S.W.2d 471 (Tenn. Crim. App. 1995), this court reiterated *Stone's* holding that "the procedural statutes d[o] not purport to limit the trial court's power to revoke" and held "that from the date of entry of the judgment of conviction, a trial court has the authority to revoke probation for the violation of a probationary condition whose application the defendant was made aware, even if the probationary term has not yet begun." *Id.* at 473.

In *Smith*, Smith pleaded guilty to the assault and stalking of the victim. His consecutive 11-month and 29-day sentences were initially diverted with the "relevant" condition of his release being: "'Stay away absolutely from victim and her family, their homes, places of employment, children's schools. There shall be no contact, whether by mail, message, telephone, third party, or in person.'" *Id.* at 472. Smith violated this condition, and the trial court revoked diversion and ordered the defendant to serve the first of the two sentences in the Weakley County Jail and the second on probation following his release from jail. While he was in jail, Smith telephoned the victim, dedicated a song to her on the radio, and had his sister contact the victim. The trial court revoked Smith's probation on the second sentence as a result of the contact. This court affirmed the revocation, finding that the principles iterated in *Stone* were applicable to Smith's case "even though [Smith's] conduct might be viewed to violate a court-ordered condition of probation and not a criminal statute." *Id.* at 473. Because Smith was "advised in open court" of the no-contact condition, we reasoned, "even though his probationary term had not begun, [Smith] was given sufficient notice to comply with due process that his violation of the no contact order would result in revocation." *Id.*

The relevant facts in *Smith* are indistinguishable from those in this case. From the commencement of proceedings in this case, the trial court repeatedly admonished the defendant that he was to have no contact with any of the victims in this case. Indeed, the defendant's bond was revoked on the basis of his continued contact with Ms. Baker. At the plea submission hearing, the trial court emphasized the importance of the defendant's having no contact with Ms. Baker and the provision was included as a "special condition" on each of the judgment forms. Notwithstanding the oral and written admonitions of the trial court, the defendant refused to comply with the no-contact provision.

We are also unpersuaded by the defendant's argument that the plea agreement in this case was in any way "unique" or that it distinguishes this case from *Stone* or *Smith* or, for that matter, any of the other myriad cases allowing revocation prior to the commencement of the probationary term. Although the defendant repeatedly posits that the fact that the defendant's "probation was not to start" until he had fully served his first sentence was an extraordinary sentence alignment, such an alignment was exactly the case in *Smith* and is, indeed, a routine sentencing alignment in this state. Given the defendant's obvious awareness of the no-contact condition, this court's previous holdings that probation may be revoked prior to the commencement of the probationary term, and the fact that the defendant's case is indistinguishable from our earlier cases, we cannot say that the trial court lacked the authority to revoke the defendant's probation in this case.

## II. *Voluntariness of the Guilty Pleas*

The defendant contends that "allowing revocation of probation at this point would rewrite the plea agreement after the fact and render the plea involuntary." He argues that "[t]he plea would not have been knowing and voluntary if it is later determined that Dr. Baker was to be on probation for twelve years." We need not belabor this argument because it is presented for the first time on appeal and therefore waived. *See* Tenn. R. App. P. 36; *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived.").

## III. *Propriety of Revocation*

The defendant claims that the trial court erred by revoking probation and ordering incarceration in this case because he "has already been severely punished for writing the letters" because "the Parole Board denied parole specifically because Dr. Baker contacted the victim." The State submits that the trial court acted properly. We agree with the State.

A trial court may revoke a sentence of probation upon a finding by a preponderance of the evidence that the defendant has violated the conditions of his release. T.C.A. § 40-35-311(e) (2006); *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). A revocation will be upheld absent a showing that the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. *Id.* (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief will be granted only when "'the trial court's logic and reasoning

was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). Upon finding a violation, the trial court may "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." T.C.A. § 40-35-311(e). Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of the suspension." *Id.* § 40-35-310. The trial judge retains the discretionary authority to order the defendant to serve the original sentence. *See State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

Here, the defendant admits that he committed the violation alleged but argues that the trial court erred by ordering incarceration because he had already been denied parole on the basis of the same conduct. The "Notice of Board Action" included in the record indicates that at least three of the parole board members cited the defendant's contact with the victim as a basis for the denial of parole. All of the signing board members cited a desire to refrain from depreciating the seriousness of the offenses as a reason for denying parole.

The defendant has cited no authority in support of his argument, and we can find none. The defendant's situation is not unlike the probationer who violates his probation by committing another crime and later receives both a probation revocation and a separate conviction and sentence for the violative conduct. Surely the defendant does not intend to suggest that revocation in such analogous circumstances would be inappropriate. That the defendant's parole was denied, at least in part, on the basis of his writing the letters to the victim does not impact the trial court's discretion to revoke his probation.

We agree with the trial court that the defendant's continued efforts to contact with Ms. Baker demonstrate an unwillingness to abide by the conditions of his probation or accept responsibility for his conduct. Moreover, we are unmoved by the defendant's assertion that he has not contacted the victim since January 2007. The defendant's newfound desire to comply with the conditions of his sentence does not alter the fact that he blatantly violated the most paramount condition of the plea agreement. The trial court did not err by revoking the defendant's probation and ordering that he serve an additional 12 months of incarceration.

### IV. *Location of Service of Incarceration*

In a footnote in its brief, the State "acknowledges that the trial court did not have the authority to sentence the defendant to serve 12 months in TDOC and that the court can only order split confinement to the county jail." In response, the defendant states that "suggesting that the judgment should be amended to reflect a jail sentence rather than have Dr. Baker serve the time in a Department of Correction facility as ordered . . . is clearly contrary to the intent of the trial court" and suggests that, if the State's assertion is correct, the case should be remanded so that the trial court can fashion the appropriate remedy.

We note simply that the State's generalized assertion is incorrect, or at least incomplete. Although it is generally true that "if the sentence is eight (8) years or less and combined

with periodic or split confinement not to exceed one (1) year, the court shall designate the place of confinement as a local jail or workhouse," T.C.A. § 40-35-314(a) (2006), the trial court possesses the authority to "transfer the defendant to" TDOC in the event the defendant "develops medical problems that the local jail or workhouse is not equipped to treat," *id.* § 40-35-314(e). In this case, the record establishes that the defendant's medical condition necessitates a TDOC sentence. In consequence, the trial court committed no error by ordering the defendant to serve the additional 12 months' incarceration in TDOC.

*V. Conclusion*

In light of the foregoing analysis, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE